UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/19/21

United States of America,

–v–

Jaquan Walters,

           Defendant.

15-cr-644 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Defendant Jaquan Walters filed an Emergency Motion seeking Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) on December 21, 2020. For the reasons that follow, his motion is DENIED.

### I.    Background

    On August 26, 2015, Mr. Walters had an altercation with Lamar Moorer over Mr. Moorer's failure to pay Mr. Walters for a $10 bag of marijuana. Dkt. No. 124 at 1. Mr. Walters left the scene on a bicycle to retrieve a handgun at an apartment complex a quarter mile away and then returned to where Mr. Moorer was walking on the sidewalk, a trip that took about six minutes. *Id.* at 2-3. Mr. Walters shot Mr. Moorer several times, the last of which was at near point-blank range, and then shot him again while he was lying on the ground. *Id.* at 4. Mr. Walters calmly walked away from the scene after using a towel to wipe his handprint off of a nearby car. *Id.* Mr. Moorer died shortly thereafter. *Id.* at 5.

On September 21, 2015, Mr. Walters was indicted for intentional killing in relation to a drug-trafficking offense under 18 U.S.C. 924(j)(1) and distribution of marijuana under 21 U.S.C. §§ 812, 841. Dkt. No. 1. On May 25, 2017, Mr. Walters was found guilty on both counts after a four-day bench trial, where the Court concluded beyond a reasonable doubt that Mr. Walters had acted with malice in the killing of Mr. Moorer. Dkt. No. 124 at 5. On November 28, 2017, the Court sentenced Mr. Walters to 300 months' imprisonment, which was a downward variance of 24 months from the guidelines range. Dkt. No. 124 at 7. At sentencing, the Court recognized that Mr. Walters grew up under exceptionally challenging circumstances, had minimal criminal history, was genuinely remorseful for the killing, and had already made sincere efforts towards rehabilitation during his time in prison. *Id.* However, the Court determined that "callus [], deliberate, execution-style murder" was "truly horrific" and that the "law [] must speak clearly and loudly" to strongly condemn the act, provide just punishment, deter Mr. Walters and others from such violent offenses, and protect the public. *Id.* at 7-8.

On December 21, 2020, Mr. Walters filed an emergency motion seeking compassionate release because of the risk his health conditions and facility placement pose to his safety during the novel coronavirus pandemic. Dkt. No. 120. The Government filed an opposition to Mr. Walters motion on January 5, 2021. Dkt. No. 124. Mr. Walters filed a Reply on January 11, 2021. Dkt. No. 127.

**II.    Discussion**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (internal citation and quotation marks omitted). The compassionate-release statute creates one such exception: It allows a court to "reduce" a term of

imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that ... extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Under the recently enacted First Step Act, defendants serving their sentence may move the Court for compassionate release. *See United States v. Gotti*, No. 02-cr-743, 2020 WL 497987, at *1 (S.D.N.Y. 2020); *United States v. Gross*, No. 15-cr-769, 2020 WL 1673244, at *2 (S.D.N.Y. 2020).

In order for a defendant to be eligible for a reduction of their term of imprisonment under 18 U.S.C. § 3582(c), there must be "extraordinary and compelling reasons" warranting such a reduction. The Second Circuit has recently held that the Sentencing Commission's policy statement §1B1.13 Note 1(D), which instructs that the power to determine what reasons are extraordinary and compelling remains exclusively with the Bureau of Prisons director, is no longer applicable. *See United States v. Brooker*, 2020 WL 5739712 at *6, 976 F.3d 228, 230 (2020). Therefore, this Court may "independently [] determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling.'" *Id.* at 234.

Mr. Walters argues that his asthma, PTSD, and placement at a high-risk facility for contracting the novel coronavirus constitute compelling reasons for release. The Court agrees that Mr. Walters' asthma in these circumstances is an extraordinary and compelling reason for release. As an otherwise physically healthy 29 year-old man, Mr. Walters would not ordinarily be in a high-risk category for complications from the novel coronavirus. However, Mr. Walters medical record clearly demonstrates that he suffers from a severe form of asthma for which he is prescribed medication and from which his symptoms have been worsening in recent years. Dkt. No. 120 at 2-3. Because of his severe asthma, Mr. Walters might be at a greater risk for

suffering serious and potentially life-threatening symptoms from COVID-19 if he were to contract the virus. *See* COVID-19 (Coronavirus Disease): People with Certain Medical Conditions, Centers For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra- precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

Mr. Walters is also at greater risk for contracting the virus because of his state of incarceration. Despite the efforts of the Bureau of Prisons, the realities of incarceration make it difficult for inmates living in close quarters, as well as the prison staff supervising them, to socially distance and adhere to the necessary hygiene protocols. As a result, outbreaks have occurred across the country's federal prison facilities. *See* Federal Bureau of Prisons, COVID-19 Cases https://www.bop.gov/coronavirus/index.jsp. The facility in which Mr. Walters is currently detained, FCI Gilmer, is no exception, with 4% of the population currently suffering from an infection of the virus. Dkt. No. 124 at 13. Moreover, as only half the population has ever been tested, the correct figure may well be much higher. Dkt. No. 120 at 4.

But while the Court determines that Mr. Walters has presented an extraordinary and compelling reason for release, that is only one of the requirements for a reduction in one's prison sentence under 18 U.S.C. § 3553(a). *See United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020). The Court must also determine that granting release is consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission to determine if release is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A). In particular, the Court must consider whether a reduced sentence would still "reflect the seriousness of the offense . . . promote respect for the law . . . provide just punishment for the offense" and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

Despite the Court's concern for Mr. Walters' serious health risk, the Court can come to no other conclusion than that granting release or home confinement at this time would greatly undermine the purposes for which his sentence was imposed.  Mr. Walters' malicious, premeditated, and senseless execution of Mr. Moorer is one of the most serious crimes a person may commit.  At sentencing, the Court recognized that only a very substantial prison sentence, in this case 25 years, would be appropriate to reflect the seriousness of Mr. Walters actions and the harm done to Mr. Moorer and his community, provide just punishment for his slaying of Mr. Moorer, promote respect for the laws that protect society from these offenses, and adequately deter Mr. Walters and others in his community from attempting such reprehensible acts in the future.  Dkt. No. 124, Ex. 2 at 45-50.  Mr. Walters has only served 5 years of his sentence at the time of this motion, and the Court determines that cutting 20 years off of his 25-year sentence would substantially undermine each of those purposes.

Recognizing the severity of his crime, Mr. Walters directs the Court to cases where courts have granted compassionate release during the novel coronavirus pandemic to defendants who committed murder.  *See* Dkt. No. 120 at 12-13 (citing *United States v. Rodriguez,* No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *5 (S.D.N.Y. Sept. 30, 2020); *United States v. Copeland*, No. 02-cr-01120 (FB), 2020 WL 2537250, at *3 (E.D.N.Y. May 19, 2020); *United States v. Rios*, No. 94cr112 (JBA), 2020 WL 7246440, at *2 (D. Conn. Dec. 8, 2020)).  However, the discretionary power to grant compassionate release requires an individualized, fact-intensive determination based on a variety of factors, and therefore the decisions of other courts regarding different defendants are limited in persuasive value.  Moreover, the defendants in those cases had served substantially more time than Mr. Walters has served here:  20 years in *Rodriguez*, 19 years in *Copeland*, and 26 years in *Rios*.  *Rodriguez*, 2020 WL 5810161, at *8; *Copeland*, 2020 WL

2537250, at *3-4; *Rios*, 2020 WL 7246440, at *6. These decisions do not affect the Court's conclusion that allowing Mr. Walters to serve a 5-year sentence for a premeditated, deliberate killing would be inconsistent with the purposes of punishment and that compassionate release is therefore inappropriate.

The Court is not persuaded by Mr. Walters remaining arguments in his motion. First, Mr. Walters asks the Court to take into account various mitigating factors. For one, Mr. Walters expressed genuine remorse for killing Mr. Moorer and the pain he caused Mr. Moorer's friends and family, and he has accepted responsibility for his actions. *Id.* at 14. Additionally, prior to the incident with Mr. Moorer, Mr. Walters had never been accused of committing a violent crime and has few instances at all on his criminal record. Dkt. No. 120 at 13. However, while the Court agrees with Mr. Walters that these are legitimate mitigating factors, the Court already took them into account in determining Mr. Walters sentence, along with considering his extremely challenging upbringing as a young person. Dkt. No. 124, Ex. 2 at 47-48. Any reduction warranted by those factors has already been accounted for by the Court in calculating his below-guidelines sentence.

Mr. Walters also points to the progress he has made so far towards rehabilitation. Mr. Walters has had no disciplinary record at FCI Gilmer. Dkt. No. 120 at 14. He has furthered his education by completing his G.E.D. and Associate of Science degree, and he plans to pursue a bachelor's degree next. *Id.* He has also completed two drug rehabilitation programs and various other educational programs during this time. *Id.* The Court genuinely commends Mr. Walters for these impressive accomplishments and encourages him to continue his efforts towards rehabilitation. However, the Court already took some of these efforts into account in calculating

his 25-year sentence, Dkt. No. 124, Ex. 2 at 47-48, and this factor does not otherwise outweigh the need for a substantial sentence to be imposed.

Lastly, Mr. Walters asks the Court to take into account the motion to vacate his sentence he filed pursuant to 28 U.S.C. § 2255, in which he argues that but for ineffective assistance of counsel the Court would not have found that the murder was premediated. *See* Dkt. No. 117. The Court determines that it would be inappropriate to preview the merits of that motion before it has been fully briefed and declines to consider it as part of the motion for compassionate release.

### III. Conclusion

For the reasons stated above, Defendant's motion for compassionate release is DENIED. This resolves Dkt. No. 120.

SO ORDERED.

Dated: January 19, 2021
  New York, New York

_____
ALISON J. NATHAN
United States District Judge